## Limmer, Jr. v. Country Belle Cooperative Farmers

*Theodore M. Tracy,* and *Stokes, Lurie & Tracy,* for plaintiffs.

*C. Donald Gates, Jr., Brandt, McManus, Brandt & Malone,* for defendants.

WENTLEY, J., April 21, 1972.—Plaintiffs filed a petition seeking to compel specific enforcement of an oral agreement of settlement of their claims for money

damages arising out of personal injuries allegedly sustained on December 18, 1968, when the automobile in which they were traveling was struck from the rear by a vehicle driven by the individual defendant, an employe of corporate defendant. On April 13, 1971, this court, by order of McLean, J., directed that judgments be entered in favor of defendants as follows: Richard L. Limmer, Jr., $10,000; Joseph M. Mehalich, $8,500; and Louis R. Salka, $6,500; thus enforcing the alleged oral agreement of settlement. Said order was reversed by the Superior Court on December 13, 1971, and the case remanded for a full hearing into all of the facts and circumstances surrounding the purported offer and acceptance of settlement. Said hearing was conducted on January 27, 1972, and subsequent thereto counsel for both parties submitted briefs on the issues of fact and questions of law involved.

Based on the testimony produced at the hearing, the court finds that on March 29, 1971, a conciliation conference was held before Hon. John J. McLean, Jr., wherein the possibility of settlement of the three claims was considered. Present were counsel for plaintiffs, Theodore M. Tracy, counsel for defendants, C. Donald Gates, Jr., and Thomas B. Watson, Jr., a claims supervisor for Pennsylvania Manufacturers Association Insurance Company (PMA), the insurer of defendants. Following its customary practice, the court discussed settlement privately, first with plaintiffs and then with defendants. Plaintiffs' counsel stated that all three cases could be settled for a total sum of $65,000. Counsel for defendants and Mr. Watson advised the court that Mr. Watson was merely substituting for a Mr. Stoyer who was ill and therefore had no authority to discuss settlement. It was agreed, however, that the matter would be considered further, PMA's home office would be contacted, and the judge

was to be advised of defendants' position with regard to settlement. A few days later, in a telephone conversation between Judge McLean and Mr. Gates, Mr. Gates advised the court that he had obtained authority to settle these cases for a total sum of $25,000. The court conveyed this information to counsel for plaintiffs in a telephone conversation. Shortly thereafter, Mr. Gates gave similar advice to Mr. Tracy in a telephone conversation and was advised that he should attempt to increase his offer. During the above described period, the case had been listed for trial and was awaiting its turn on the trial list.

On April 7, 1971, the attorneys were notified to appear to select the jury. During the period of selection, plaintiffs' counsel again raised the question of settlement, and upon completion of the selection of the jury it was agreed by counsel that this matter would be explored with their respective clients. During the luncheon hour Mr. Tracy telephoned Mr. Gates and advised him that his clients had decided to accept the offer of $25,000 and had agreed upon the manner of its distribution. Mr. Gates replied that he had just learned that the home office was unwilling to approve of this settlement and, in fact, had never previously advised him that he had authority to offer to settle for the sum of $25,000.

In cases where PMA is the insurer, all settlements in excess of $5,000 must have the express approval of the home office in Philadelphia, and during the period in question the individual charged with this responsibility was a Mr. Dauber. Mr. Dauber, in fact, never issued authority to Mr. Gates to settle for the sum of $25,000, or any other sum.

The testimony also discloses that subsequent to the initial meeting with Judge McLean, Mr. Gates and the local representative of PMA agreed between them that

the case should be settled for $25,000 and therefore sought authority from the home office. Although the testimony is not entirely clear, it appears that the home office followed its usual procedure of requesting documentation with respect to the amount of medical bills and also a verification of the time lost from employment. Mr. Gates testified that this was their usual procedure and that over the period of time which he has acted as their counsel, upon receiving such verification, they approved the recommendations of counsel and their local representative. Mr. Gates apparently assumed that the company would follow its past procedure and entertained no doubts that authority would be forthcoming because he knew that the requested verifications had been furnished. It appears to the court that Mr. Dauber, who had recently undertaken these duties, varied from the usual custom and practice, much to the embarrassment of Mr. Gates.

This court has on numerous occasions considered the impact of our present conciliation procedures on the settlement process. See, for example, Burnett v. Norfolk & Western Railway Co., 115 Pitts.L.J. 367 (1967); Mastrogeorge v. Port Authority, et al., 115 Pitts.L.J. 414 (1967); and Grandinetti v. Markovic, 113 Pitts.L.J. 96 (1965). Under the rules governing conciliations in this court, counsel is directed to appear with a representative of the client who has authority to settle. Although it is generally true that an attorney does not have apparent authority to bind his client, such apparent authority probably exists when counsel, pursuant to our local rules, represents that he has been authorized to offer a certain sum of money. This is particularly true when dealing with an insurance company which is in almost continuous litigation in this court and must be deemed to be fully familiar with our rules and our procedure. The facts in the instant

case are even stronger, however. Mr. Gates was directed to procure authority and represented to the court that he had. Communications between litigants, both by the ethics of the legal profession and by long-standing custom and tradition, are usually made through counsel. That a litigant speaks to the court through its counsel is so fundamental to our adversary system of justice that no citation of legal authority is necessary. When an insurance company retains counsel, it clothes him with the apparent authority to report its position to the court and to other litigants. There can be no question that PMA held out Mr. Gates as its spokesman and that the court and counsel for plaintiffs properly relied upon the accuracy of his report. Therefore, a binding oral agreement of settlement was effected.

Defendants also contend that even if an offer to pay $25,000 was made a few days subsequent to the conciliation, which was held on March 29th, the offer lapsed because it was not accepted until April 7th. Specifically, defendants rely upon the fact that the jury had been selected prior to the acceptance. They contend that this change of circumstances, coupled with the time period involved, caused the offer to lapse. While it is true that the acceptance of an offer must occur within a reasonable time (Van Schoiack v. U.S. Liability Insurance Co., 390 Pa. 27), the determination of what constitutes a reasonable time must be made from all of the circumstances existing when the offer and acceptance are made: Restatement 2d, Contracts, §40. Here, approximately five days had elapsed. This fact, standing by itself, could not constitute an unreasonable period of time. Many trial lawyers feel that the character and makeup of a jury are essential ingredients in evaluating a case for purposes of settlement. Consequently, the careful lawyer will advise his ad-

versary that his offer of settlement will not pertain subsequent to such selection. However, the court cannot say that in all cases it must find that any offer of settlement cannot survive selection of a jury. The determination of the effect of the type of jurors selected on settlement requires a subjective analysis by the particular lawyer, and, therefore, he must communicate to his adversary the fact that he had withdrawn his offer.

Because of the possible publication of this opinion, a further word with respect to defendants' counsel appears appropriate. The court is convinced that Mr. Gates acted in the utmost good faith. Through years of representing PMA, he was confident that no one would question his recommendation that $25,000 be offered by way of compromise. Because plaintiffs were demanding $65,000, Mr. Gates no doubt failed to exercise the proper degree of caution in making absolutely certain that his recommendation in this case would be followed as had his recommendations in previous cases. There is no question that he slipped from the high exacting degree of performance required of lawyers, but the court in no way finds his conduct reprehensible. He has served the court of common pleas for many years and is a highly skilled advocate of unquestionable integrity. However, this series of events should sound a warning to all counsel to proceed with the utmost caution in making representations concerning settlement to their fellow lawyers and, most particularly, to this court.

## ORDER OF COURT

And now, to wit, April 21, 1972, for the reasons set forth in the attached opinion, it is ordered that judgments be entered in the above-captioned matters as follows:

Richard L. Limmer, Jr. v. Country Belle Cooperative Farmers, a corporation, and Carl Bayer, judgment in favor of plaintiff, Richard L. Limmer, Jr., in the amount of $10,000.

Joseph M. Mehalich v. Country Belle Cooperative Farmers, a corporation, and Carl Bayer, judgment in favor of plaintiff, Joseph M. Mehalich, in the amount of $8,500.

Louis R. Salka v. Country Belle Cooperative Farmers, a corporation, and Carl Bayer, judgment in favor of plaintiff, Louis R. Salka, in the amount of $6,500.